ORDERED.

**Dated:  February 28, 2024**

Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 8:19-bk-07720-CED
                                                    Chapter 11

Friends of Citrus and
The Nature Coast, Inc.,

     Debtor.
_____/

**MEMORANDUM OPINION AND ORDER
(1) DENYING VITAS' REQUEST FOR RELIEF UNDER
RULE 60(b)(6) AND (2) DECLINING TO APPLY THE
DOCTRINE OF RES JUDICATA TO DEBTOR'S SUPPLEMENT
TO MOTION FOR ATTORNEY'S FEES AND COSTS**

THIS CASE came before the Court on Debtor's *Supplement to its Motion for*

*Attorneys' Fees and Costs and Memorandum in Support* (the "Supplemental Fee

Motion"),[1] and the response in opposition and objection to the Supplemental Fee

_____

[1] Doc. No. 532.

Motion and request for relief under Rule 60(b)(6)[2] filed by Vitas Healthcare Corporation ("Vitas"). For the reasons that follow, the Court will (1) deny Vitas' request for relief under Rule 60(b)(6), and (2) decline to apply the doctrine of res judicata so as to bar Vitas from challenging the reasonableness of attorney's fees included in the Supplemental Fee Motion were previously awarded to Debtor's attorneys by Judge Michael G. Williamson.

## I.    BACKGROUND

Debtor's claim for attorney's fees and costs arises from its successful objection to Vitas' proof of claim. The Court previously granted Debtor's Motion for Attorney's Fees and Costs (the "Fee Entitlement Order"), in which it directed Debtor to file a supplemental motion setting forth its reasonable fees and costs.[3] Before Debtor filed the Supplemental Fee Motion, Vitas moved for reconsideration under Rule 59,[4] which the Court denied.[5] In its response to the Supplemental Fee Motion, Vitas once again requests the Court to reconsider the Fee Entitlement Order, this time under Rule 60(b).

---

[2] Doc. No. 549.

[3] Doc. No. 524.

[4] Doc. No. 525.

[5] Doc. No. 535.

The Court will briefly describe the parties' underlying dispute, which is set forth in more detail in Judge Michael G. Williamson's *Findings of Fact and Conclusions of Law on Debtor's Claim Objection and Turnover Motion* ("the Findings of Fact")[6] and the Fee Entitlement Order.

### A.    The Sale of Debtor's Assets to Vitas

Debtor previously owned and operated an in-patient hospice facility known as "Hospice House." Before Debtor filed this Chapter 11 case, Debtor sold its assets, including the Hospice House, to Vitas under an Asset Purchase Agreement (the "APA") and a Real Estate Purchase Agreement (the "REPA").

The APA included Debtor's representation and warranty that Hospice House was in compliance with all federal, state, and local laws, and Debtor agreed to indemnify Vitas for any damages resulting from a breach of its representations and warranties. Under the REPA, Vitas purchased "as is" the real property on which the Hospice House was located, "together with all improvements located thereon." The improvements to the Hospice House included an in-ground generator (the "Generator").

---

[6] Doc. No. 505.

3

Vitas and Debtor entered into the REPA and the APA at the same time, and the REPA and APA referenced each other, with the APA defining "Transaction Documents" to include the REPA.

The APA did not include a provision for attorney's fees, but the REPA contained the following prevailing party attorney's fee provision:

> **Attorneys' Fees and Costs**. Should either party employ attorneys to enforce any of the provisions of this Agreement, the non-prevailing party in connection with any litigation shall pay to the prevailing party all costs, expenses and reasonable attorneys' fees expended or incurred by the prevailing party in connection therewith. This provision shall survive the termination of this Agreement.[7]

To secure its indemnification obligations under the APA, Debtor entered into an escrow agreement with Vitas (the "Escrow Agreement") and deposited $1.3 million of the sales proceeds in escrow (the "Escrowed Funds").[8]

The Escrow Agreement provided for a schedule of agreed upon disbursements of the Escrowed Funds to Debtor and, in the event of a dispute between the parties, for the escrow agent (Fifth Third Bank) to pay a claim against the Escrowed Funds when it became a "Final Claim." A claim became a "Final Claim" upon delivery to the escrow agent of (1) an agreement by the parties directing payment of the claim; (2) a certified copy of an arbitrator's award directing the payment of the claim; or (3)

---

[7] Doc. No. 518, ¶ 17; Doc. No. 189-1.

[8] Doc. No. 549-2.

a certified copy of a final, binding, and non-appealable judgment of a court of competent jurisdiction determining a specified amount to be paid from the Escrowed Funds.[9]

> The Escrow Agreement included the following provision:
>
> [Debtor] and [Vitas] shall each pay their respective legal, accounting and other costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby.[10]

After the closing of the APA and the REPA, Vitas contended that because the Generator was insufficient to power the facility's HVAC system, Hospice House failed to comply with federal, state, and local laws that required Debtor to have an alternate source of energy to maintain safe temperatures in case of an emergency. As a result, Vitas contended that it was entitled to disbursement from the Escrowed Funds for the cost of replacing the Generator.

### B.    The Claim Litigation

In August 2019, Debtor filed its Chapter 11 case, and Vitas filed a proof of claim in the amount of $1,055,270.33.[11]

---

[9] *Id.* at § 3.2.

[10] *Id.* at § 7.2.

[11] Claim No. 12-1.

Debtor objected to Vitas' claim and sought turnover of the Escrowed Funds from Fifth Third Bank (the "Objection").[12] Generally, Debtor denied that governmental "alternate source of energy" regulations required it to have a generator.[13] And even if the regulations did require a generator, Debtor contended that the Generator was a "fixture" subject to the REPA's "as-is" provision.[14] Judge Williamson set the Objection for trial in December 2020.

Five months before trial, Vitas filed an amended proof of claim, reducing its claim to $510,884.42.[15] After a four-day trial, Judge Williamson sustained the Objection; he entered the Findings of Fact[16] and an *Order Directing Vitas and Fifth Third Bank to Turnover Escrow Funds and Sustaining Debtor's Objection to Vitas Claim #12 as Amended* (the "Order Sustaining Objection").[17]

In the Findings of Fact, Judge Williamson found that Debtor did not breach the APA's representations and warranties because "neither state law nor federal law required the Debtor to have a generator to maintain safe temperatures."[18] Because

---

[12] Doc. Nos. 93, 94 & 317.

[13] Doc. No. 317 at 14 – 18.

[14] *Id.* at 11 – 13.

[15] Claim No. 12-2.

[16] Doc. No. 505.

[17] Doc. No. 510.

[18] Doc. No. 505 at 19.

Judge Williamson found Debtor did not breach the APA's representations and warranties, he declined to address Debtor's argument that Vitas' claim was barred by the REPA's "as-is" provision.[19]

In the Order Sustaining Objection, Judge Williamson (1) disallowed Vitas' claim; (2) directed Fifth Third Bank to release the nearly $1.3 million of Escrowed Funds to Debtor; and (3) directed the parties to file legal memoranda regarding Debtor's entitlement to fees.[20]

### C.    The Court approves Debtor's counsel's attorney's fees for representing Debtor in the Chapter 11 case.

Meanwhile, during Debtor's Chapter 11 case—and while the Objection was pending—Debtor's attorneys (Nelson Mullins) filed nine fee applications for their services representing Debtor in the Chapter 11 case. The fee applications collectively sought nearly $1.3 million in fees and almost $40,000 in costs; the fee applications separately itemized the fees and costs that Debtor incurred in litigating the Objection.[21]

Nelson Mullins served the fee applications on all creditors, including Vitas, providing them with the opportunity to object and to request a hearing; neither Vitas

---

[19] *Id.* at 18, n. 103.

[20] Doc. No. 510, ¶¶ 2 – 4.

[21] Doc. Nos. 68, 104, 152, 195, 230, 294, 405, 432 & 483.

nor any other party in interest objected. Finding that the fees and costs sought were "fair, reasonable, and appropriate," Judge Williamson ultimately entered an order awarding the firm nearly $1.3 million in fees (the full amount sought) and nearly $40,000 in expenses (the "Final Bankruptcy Fee Order").[22] The Final Bankruptcy Fee Order included $693,853.50 in attorney's fees and $18,273.62 in costs related to the Claim Litigation (the "Previously Awarded Fees").[23]

### D. Debtor's Motion for Prevailing Party Attorney's Fees and Vitas' Rule 59 Motion for Reconsideration

On November 12, 2021, Debtor timely moved for prevailing party attorney's fees and costs it incurred in connection with the Claim Litigation (the "Fee Motion").[24] Judge Williamson passed away before he ruled on the Fee Motion, and the case was reassigned to Chief Judge Caryl E. Delano. Judge Delano directed Vitas to file a response to the Fee Motion. Thereafter, Vitas filed its response,[25] and Debtor replied.[26]

After considering the parties' submissions, the Court entered an order (the "Fee Entitlement Order") in which the Court (1) ruled that Debtor is entitled to its attorney's fees and costs under the REPA's prevailing party attorney's fee provision

---

[22] Doc. No. 491 at 1 – 2; *see also* Doc. Nos. 84, 133, 170, 208, 261, 319, 410 & 451.

[23] Doc. No. 491.

[24] Doc. No. 518.

[25] Doc. No. 522.

[26] Doc. No. 523.

because the REPA and the APA (which had no provision for attorney's fees) should be treated as a single contract, and (2) directed Debtor to file a supplemental motion within 30 days setting forth the reasonable fees and expenses to which it claimed entitlement.[27]

Before Debtor filed the Supplemental Fee Motion, Vitas moved for reconsideration of the Fee Entitlement Order under Federal Rule of Civil Procedure 59(e) (the "Rule 59 Motion").[28] Vitas contended that the Court erred when it treated the REPA and the APA as a single contract, such that the Court's ruling was "predicated on clear legal errors and mistakes" resulting in manifest injustice.[29] The Court denied Vitas' Rule 59 Motion.[30]

Debtor timely filed its *Supplement to its Motion for Attorneys' Fees and Costs* (the "Supplemental Fee Motion").[31] The Supplemental Fee Motion reflects that Debtor incurred $693,853.50 in attorney's fees and $18,273.62 in costs litigating the merits of

---

[27] Doc. No. 524.

[28] Doc. No. 525.

[29] *Id.* at ¶ 23.

[30] Doc. No. 535.

[31] Doc. No. 532.

the Objection,[32] all which were included in the Previously Awarded Fees.[33] Debtor also seeks an award of the fees it has expended after the ruling on the merits of the Objection:  an additional $101,069 for 202 hours of work.[34]

On October 4, 2023, the Court conducted a hearing on the Supplemental Fee Motion. At that hearing, Debtor argued that the doctrine of res judicata bars Vitas from challenging the reasonableness of the Previously Awarded Fees. The Court directed Vitas to file a response and Debtor to file a reply.[35]

Vitas timely objected to the Supplemental Fee Motion.[36] First, Vitas incorporated in its objection a second motion for reconsideration of the Fee Entitlement Order, this time brought under the "catchall" provision of Federal Rule of Civil Procedure 60(b)(6). Second, Vitas argued that the doctrine of res judicata does not bar it from challenging the Previously Awarded Fees. And third, Vitas objected to specific time entries related to the fees incurred by Debtor in connection with the Fee Entitlement Order. Pending the Court's decision on the res judicata issue, Vitas

---

[32] *Id.* at ¶ 12.

[33] *Id.*

[34] *Id.* at ¶ 13.

[35] Doc. Nos. 546 & 547.

[36] Doc. No. 549.

has not identified any of the Previously Awarded Fees — the $693,853.50 in attorney's fees and $18,273.62 in costs—as being unreasonable.

The Court has carefully considered the Supplemental Fee Motion, Vitas' response and incorporated Rule 60(b)(6) motion, and Debtor's reply.[37]

## II.    ANALYSIS

As set forth below, the Court concludes that (a) Vitas fails to state a claim for relief under Rule 60(b)(6); and (b) the doctrine of res judicata does not bar Vitas from challenging the reasonableness of the Previously Awarded Fees.

### A.    Vitas is not entitled to relief from the Fee Entitlement Order under Rule 60(b)(6).

Under Federal Rule of Bankruptcy Procedure 9024, Federal Rule of Civil Procedure 60—which governs relief from final judgments and orders—applies in bankruptcy cases.[38]

Rule 60(b)(1)-(5) lists five specific grounds warranting relief from a final judgment or order.[39] The "catchall" provision of Rule 60(b)(6) authorizes relief for

---

[37] Doc. No. 550.

[38] Fed. R. Bankr. P. 9024.

[39] Fed. R. Civ. P. 60(b)(1) – (5).

"any other reason justifying relief from the operation of the judgment."[40] Relief under Rule 60(b)(6), however, is "only available in 'extraordinary circumstances.'"[41]

In its Rule 60(b)(6) request, Vitas raises an issue for the first time:  it now contends that Debtor's claim to prevailing party attorney's fees is governed not by the APA or the REPA, but rather by the parties' Escrow Agreement.[42] And Vitas contends that relief under Rule 60(b)(6) is warranted because Judge Williamson's passing makes this "an extraordinary case."

Vitas argues that the Objection was really a dispute regarding the Escrowed Funds that was controlled by the Escrow Agreement, and that the terms of the Escrow Agreement "require each party to pay their own attorneys' fees and costs."[43] And Vitas asserts that because Judge Williamson did not address entitlement to attorney's fees in his Findings of Fact "on the merits of the dispute," but, instead, entered the Order Sustaining Objection (which Vitas incorrectly contends "specifically addressed

---

[40] *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (quoting Fed. R. Civ. P. 60(b)(6)).

[41] *FTC v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1244 (11th Cir. 2023) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)).

[42] Vitas offers no explanation for why it failed to raise this issue in its original response to Debtor's Fee Motion or in its Rule 59 Motion.

[43] Doc. No. 549, ¶ 41.

the Escrow Agreement"), Judge Williamson must have intended for the Escrow Agreement to govern the fee dispute.[44]

But Vitas overlooks the clear evidence of Judge Williamson's intent regarding the attorney's fees issue: in the Order Sustaining Objection, Judge Williamson directed the parties to file legal memoranda regarding Debtor's entitlement to fees.[45]

The Court concludes that the fact the Judge Williamson addressed entitlement to attorney's fees in the Order Sustaining Objection rather than in his Findings of Fact is *not* evidence of his intent to deny fees to Debtor. And the Court concludes that Judge Williamson's passing before he ruled on Debtor's entitlement to fees is not an "extraordinary circumstance" that would warrant relief from *this* Court's reconsideration of *its own* ruling under Rule 60(b)(6).

But even if the Court were to find that reconsideration of the Fee Entitlement Order is warranted under Rule 60(b)(6), Vitas is wrong on the merits of its argument.

First, the Escrow Agreement's fee provision is *not* a prevailing party fee provision; it simply provides that the parties will each pay their own respective legal, accounting, and other costs and expenses incurred in connection with the Escrow Agreement and the "transactions" contemplated thereby, such as the fees incurred in

---

[44] *Id.* at ¶ 45.

[45] Doc. No. 510, ¶ 4.

negotiating and drafting the Escrow Agreement. In other words, the Escrow Agreement is merely the mechanism by which the Escrowed Funds were held by the escrow agent, Fifth Third Bank, and principally governed how the Escrowed Funds would be held, when they could be disbursed, how a claim against the Escrowed Funds could be made, and the escrow agent's duties and responsibilities.

And second, the Claim Litigation did not relate to the terms of the Escrow Agreement itself. In fact, the Escrow Agreement does not refer to potential litigation between the parties regarding entitlement to the Escrowed Funds. Here, there was no dispute over when or how claims against the Escrowed Funds were to be paid. Rather, Vitas filed a claim in Debtor's bankruptcy case; Debtor objected to the claim; and the Bankruptcy Court, after a trial, resolved the Objection by entering the Findings of Fact and the Order Sustaining Objection. The Order Sustaining Objection gave rise to a "Final Claim," as defined in the Escrow Agreement, which the escrow agent was required to pay.

In other words, Debtor's Objection arose under the APA and the REPA—which this Court ruled should be treated as a single, integrated contract—and not under the Escrow Agreement. Thus, the Court concludes that the Escrow Agreement does not govern Debtor's entitlement to fees.

For the foregoing reasons, the Court will deny Debtor's request to vacate the Fee Entitlement Order under Rule 60(b)(6).

### B.    Res judicata does not bar Vitas from challenging the reasonableness of the Previously Awarded Fees.

The doctrine of res judicata bars a party from relitigating claims that were—or that could have been—fully litigated in a previous action and decided on the merits.[46] For the following reasons, the Court finds that res judicata does not apply.

For res judicata to bar relitigation of a claim, four elements must be met:

- There must be a prior judgment rendered by a court of competent jurisdiction;

- The prior judgment must be on the merits and final;

- There must be an identity of parties or their privies to the previous action; and

- The later action must involve the same claim as the previous one.[47]

Vitas apparently acknowledges that the Previously Awarded Fees are a prior judgment rendered by a court of competent jurisdiction, meeting the first element. But Vitas argues that Debtor fails to satisfy the remaining three res judicata elements.

Specifically, Vitas contends (1) the Final Bankruptcy Fee Order could not have been "on the merits" because it "was not the product of an evidentiary hearing" and Judge Williamson merely "rubber-stamped" the orders allowing the fees;[48] (2) the Fee

---

[46] *Kaiser Aerospace v. Teledyne Indus. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1296 (11th Cir. 2001).

[47] *In re Atlanta Retail, Inc.*, 456 F.3d 1277, 1285 (11th Cir. 2006).

[48] Doc. No. 549, ¶ 19.

Motion does not involve the same issues as Judge Williamson's approval of the fee applications because the fee applications involved Nelson Mullins' right to payment from Debtor, whereas the Fee Motion involves Debtor's right to payment from Vitas;[49] and (3) there is no identity of parties to the previous action—the nine fee applications—because the fee applications were contested matters involving only Debtor and Debtor's counsel.[50] The Court will address each of Vitas' contentions in turn.

First, the Court finds that Final Bankruptcy Fee Order was a decision on the merits. Bankruptcy Code § 330 authorizes bankruptcy courts to award professionals only their "*reasonable* compensation for actual, necessary services."[51] So, regardless of whether a party in interest objects, this Court has the "independent authority and *responsibility* to determine the reasonableness of all fee requests."[52] Put another way, this Court does not "rubber-stamp" orders allowing attorney's fees, and there is no evidence that Judge Williamson rubber-stamped the Final Bankruptcy Fee Order; it was a decision on the merits.

---

[49] *Id.* at ¶ 21.

[50] *Id.* at ¶ 20.

[51] 11 U.S.C. § 330(a)(1)(A) (emphasis added).

[52] *In re P.H.I. Group, Inc.*, 2023 WL 5841927, at *1 (Bankr. N.D. Ill. Sept. 8, 2023) (quoting *In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987)); *see also In re Busy Beaver Bldg. Ctr.*, 19 F.3d 833, 841 (3d Cir. 1994) (opining that "[b]eyond possessing the power, we think the bankruptcy court has a *duty* to review fee applications.").

Second, the Court finds that approval of the fee applications involved the same issues as the Fee Motion. As the bankruptcy court explained in *In re All American Semiconductor*, "[i]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."[53] Here, the fee applications and the Fee Motion both arise out of the services that Nelson Mullins provided Debtor in connection with the Objection and the reasonableness of the fees Nelson Mullins charged for those services. So the claims are the "same."

Third, however, the Court finds that there was no identity of parties. Although it is not accurate to say that fee applications are only between a debtor and debtor's counsel because any party with a pecuniary interest—including general unsecured creditors—may object to a fee application,[54] the issue here is whether Vitas had a "pecuniary interest." Theoretically, Vitas would have been entitled to a distribution from the estate if Judge Williamson had overruled the Objection. But, as a practical matter, whether Nelson Mullins' fee applications were allowed or disallowed would

---

[53] 427 B.R. 559, 567 (Bankr. S.D. Fla. 2010) (citing *Kaiser Aerospace v. Teledyne Indus. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1299 (11th Cir. 2001)).

[54] 11 U.S.C. § 1109 ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."). The Court notes that Nelson Mullins' fee applications were served on all creditors, including Vitas, who were given an opportunity to object and to request a hearing.

not have had an actual impact on the amount of Vitas' hypothetical recovery because the Escrowed Funds were more than sufficient to pay Vitas' claim in full. The Court therefore concludes Vitas had no actual pecuniary interest in the fee applications such that there was no identity of parties.

Therefore, the Court concludes that Debtor has not satisfied each of four elements required for the application of res judicata.

Finally, even if the four res judicata elements were satisfied, the Court would decline to invoke res judicata to preclude Vitas from challenging the reasonableness of the Previously Awarded Fees. As the Eleventh Circuit held in *Maldonado v. U.S. Attorney General*, the application of res judicata is not mechanical, and courts "have some leeway in deciding whether or not res judicata bars a subsequent suit."[55] Here, even if the Court determined that Vitas had *some* pecuniary interest in Nelson Mullins' fee applications, the Court is not persuaded that Vitas *should* have objected to the applications before Judge Williamson had ruled on the merits of the Objection.

Because the Court has found Vitas is not bound by Judge Williamson's rulings on the reasonableness of Nelson Mullins' attorney's fees, the Court will examine the fees to make its own determination as to reasonableness.

---

[55] 664 F.3d 1369, 1375 (11th Cir. 2011); *also see Democratic Exec. Comm. of Florida v. Detzner,* 347 F. Supp. 3d 1017, 1026 (N.D. Fla. 2018) (explaining that courts have "some discretion" in deciding whether res judicata applies).

18

### III.   CONCLUSION

The Court has already ruled Debtor, as the prevailing party in the Claim Litigation, is entitled to recover its reasonable attorney's fees and costs incurred in connection with its Objection. For the reasons set forth above, the Court finds that (a) Vitas has failed to establish a basis under Rule 60(b)(6) for the Court to reconsider the Fee Entitlement Order; and (b) res judicata does not bar Vitas from challenging the reasonableness of the Previously Awarded Fees.

Accordingly, it is

**ORDERED:**

1.     Vitas' request for relief from the Fee Entitlement Order under Rule 60(b)(6) is **DENIED.**

2.     Vitas is not barred from challenging the reasonableness of the Previously Awarded Fees.

3.     Within 14 days from entry of this Order, Vitas shall supplement its response to Debtor's Supplemental Fee Motion to set forth, with reasonable precision,

each of the time entries to which Vitas objects as being unreasonable and the reason

why the time entry is unreasonable.[56]


Clerk's Office to serve interested parties via CM/ECF only.

---

[56] Vitas' original response included objections to time entries incurred after a ruling on the merits of Debtor's Objection. To some extent, the response included generalized statements, which are not entitled to much weight. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight. As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.") (citation omitted). Vitas' supplemental response should restate any objection to time incurred after the ruling on the merits of Debtor's Objection with reasonable precision.